**Earl STRONG and Tarika Strong, Plaintiffs,**

v.

**Maria MONTAVA, Freddy Wilkenson, Julia Wilkenson, Freddy Wilkenson, Sr., Diane Mallay, and Nancy Staub, Defendants.**

**Earl Strong and Tarika Strong, Plaintiffs,**

v.

**The County of Nassau, Dennis Dillon, and Nassau County Police, Defendants.**

**Nos. CV 98–2672, CV 98–4646.**

United States District Court, E.D. New York.

July 27, 1999.

County Police Department, Mineola, New York, for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

These are consolidated civil rights lawsuits brought by plaintiffs Earl Strong and Tarika Strong against the County of Nassau and several individuals, each of whom were neighbors of the plaintiffs (the "Individual Defendants"). Briefly stated, plaintiffs' allege that their arrest and prosecution following an altercation at a block party amounted to a violation of their civil rights. The Individual Defendants are alleged to have conspired among themselves and with law enforcement officials to effectuate the false arrest and subsequent prosecution.

At a conference held on July 21; 1999, this court considered the Individual Defendants' motions for summary judgment. The court granted the summary judgment motions to the extent that they were directed to the claims of Earl Strong and denied the motions to the extent they were directed to the claims of Tarika Strong. The court indicated that a written opinion would follow detailing the legal basis for the court's rulings. This is that opinion.

## BACKGROUND

### I. Factual Background

#### A. The Block Party

At all relevant times, plaintiffs and the Individual Defendants were neighbors on Woodland Avenue in South Hempstead, New York. Plaintiffs Earl Strong and Tarika Strong are father and daughter. Their claims arise from events that took place on August 5, 1995, during a block party on Woodland Avenue and the ensuing prosecution of the Strongs on August 6, 1995 and thereafter. During the block party, an altercation involving Earl Strong and defendants Julia Wilkerson and her son, Freddie Wilkerson, took place. The other Individual Defendants appear to have been

Earl Strong and Tarika Strong, East Northport, New York, plaintiffs pro se in CV 98-2672 and CV 98-4646.

Freddy Wilkenson, Julia Wilkenson, and Robert Wilkenson, Jr., South Hempstead, New York, defendants pro se.

Diane Mallay, South Hempstead, New York, defendant pro se.

Maria Montava, South Hempstead, New York, defendant pro se.

Nancy Staub, South Hempstead, New York, defendant pro se.

Owen B. Walsh, Nassau County Attorney, by Charles Horn, Deputy County Attorney, County of Nassau, Dennis Dillon, Nassau County District Attorney, Nassau

witnesses to the altercation. One of these individuals, defendant Nancy Staub, called for emergency police assistance.

### B. *The Arrest and Prosecution of Plaintiffs*

Nassau County police officers responded to the call of Nancy Staub. Thereafter, Earl Strong was arrested and charged, under New York State criminal law, with assault in the third degree and harassment in the second degree. Plaintiff Tarika Strong, who was not involved in the initial physical altercation, was arrested and charged with harassment in the second degree.

The charges against Earl Strong arose out of his altercation with the Wilkersons. The crime report completed by the arresting officers states that they responded to a claim of a fight at a block party. Upon their arrival at the scene, Julia Wilkerson and Freddie Wilkerson stated that Earl Strong, while in a verbal fight with the Wilkersons, grabbed Julia Wilkerson and threw her to the ground. Freddie Wilkerson stated that when he tried to stop Mr. Strong, he too, was punched and thrown to the ground. The police officers arrested Earl Strong and the Wilkersons were taken to a local hospital by the South Hempstead Fire Department.

Tarika Strong was arrested on August 6, 1995, the day after the block party. The charge against Tarika arose out of threats she was alleged to have made to defendant Maria Montalvo. Montalvo provided police officers with sworn testimony that Tarika Strong threatened her because Montalvo gave a statement to police concerning Earl Strong's behavior at the block party. The remaining Individual Defendants also gave statements to police officials concerning the altercation at the block party. These individuals were further involved in the prosecution of the Strongs by acting as witnesses.

### C. *The Outcomes of the Criminal Proceedings Against the Strongs*

Both parties have annexed to their submissions papers detailing the criminal prosecution of Earl Strong. As noted, Mr. Strong was charged with assault in the third degree and harassment in the second degree. He was convicted on both counts after a jury trial. On appeal to the Appellate Term of the Supreme Court of the State of New York (the "Appellate Term"), the conviction on the assault charge was reversed, but the conviction on the harassment charge was affirmed.

The court digresses, here, to express its dissatisfaction, to say the least, with the submission of Mr. Strong. The judgment of the Appellate Term is a one page document setting forth the reversal of the assault conviction and the affirmance of the harassment conviction. Annexed to the Appellate Term judgment is the opinion of that court. Both Mr. Strong and Ms. Mallay appended the judgment of the Appellate Term to their papers. Mallay's submission includes the opinion of the appellate court. Mr. Strong's submission does not include the full opinion of the Appellate Term, but only the one page judgment.

When reviewing the papers and comparing the judgments submitted by Mallay and Strong, the court noted a glaring difference in the papers submitted. Mallay's judgment stated, as noted above, that the conviction on the assault charge was reversed but the conviction on the harassment charge was affirmed. These two holdings appear on two separate lines of the judgment.

The Appellate Term judgment appended to Mr. Strong's papers does not contain the last line of the judgment—the notation that the conviction on the harassment charge was affirmed. Instead, it appears that the judgment submitted by Mr. Strong was altered to delete the reference to the affirmance of the harassment charge, and thus have it appear that Earl

Strong was cleared of all charges arising out of the block party incident.

Reluctant to believe, based only on the parties' submissions, that a judgment had been altered, the court further investigated the matter by contacting the Appellate Term to obtain a copy of that court's judgment concerning Mr. Strong's criminal case. The judgment subsequently forwarded by the Appellate Term confirmed this court's suspicions that Mr. Strong had attempted to defraud this court by presenting an altered document in support of his position.[1] The court is satisfied that it would be wholly justified in dismissing Mr. Strong's case in its entirety based solely on the fraud attempted to be perpetrated on this court. This ultimate sanction is not, however, necessary, because Mr. Strong's case, as discussed below, is otherwise dismissible on the merits.

### D. *The Opinion of the Appellate Term Regarding Mr. Strong's Case*

The Appellate Term opinion states that the assault conviction against Earl Strong was reversed on the ground that the accusatory instrument was jurisdictionally defective for failure to properly allege the requisite element of physical injury. However, the jury was found to have properly convicted Earl Strong of harassment and the conviction on that charge was affirmed. Specifically, the Appellate Term found that the evidence established that Earl Strong initiated the altercation with his neighbors when he was prohibited from driving his car onto the street. *See People v. Strong,* 179 Misc.2d 809, 689 N.Y.S.2d 341 (App. Term 1999). More specifically, the state court appellate opinion indicates that Earl Strong "displayed a belligerent and hostile attitude toward his neighbors which was clearly manifested in his unprovoked physical confrontation with a defenseless 62 year old woman." *Id.*

### E. *Tarika Strong's Criminal Case*

While the court has been provided, as described above, with documents clearly outlining the criminal prosecution of Earl Strong, the documents regarding the prosecution of Tarika Strong are more sparse. What is clear to the court is that Tarika Strong's arrest for harassment took place after Maria Montalvo swore to a complaint stating that Ms. Strong threatened Ms. Montalvo the day after the arrest of Earl Strong. Ms. Montalvo's statement was corroborated by that of defendant Diane Mallay which states that she observed Tarika Strong screaming threats at Maria Montalvo.

It is also clear that Tarika Strong was convicted of the harassment charge and the conviction was reversed on appeal. The reversal of Tarika Strong's conviction states only that the People "failed to establish that defendant's conduct was anything more than en emotional outburst, and thus the conviction must be reversed." *People v. Tarika Strong,* No. 95–1747 NCR (App.T. Jan. 27, 1998).

Not surprisingly, there is nothing in the opinion to substantiate the claim set forth in the Strongs' papers that the Appellate Term specifically found that Tarika Strong's constitutional rights were violated. Nonetheless, it is clear (unless the court has been provided with another altered document) that Tarika Strong's conviction was reversed on appeal.

### F. *The Eviction of the Strongs*

The court has been provided with state court papers indicating that plaintiff Earl Strong and his wife Lilly Strong, who had apparently rented their house on Woodland Avenue, were evicted from their home. A judgment of the Civil Term of the First District Court, Nassau County, dated February 22, 1996, states that the Strongs' landlord filed a Notice of Petition

---

1. The court appends hereto copies of the judgments submitted by the parties as well as the official judgment of the Appellate Term.

for unpaid rent and a trial was held. The judgment granted possession of the home rented by the Strongs to the owner of the premises and ordered the Strongs to pay a money judgment in the amount of $3,110. *See Wilson v. Strong,* No. SP 07031/95 (District Ct.Nassau County February 22, 1996).

## II. *Plaintiffs' Complaint*

Plaintiffs' complaint against the Individual Defendants details plaintiffs' version of the events of August 5, 1995 and plaintiffs' subsequent arrests and prosecutions. Construing the *pro se* complaint liberally, it appears that plaintiffs seeks to allege a conspiracy, pursuant to 42 U.S.C. § 1985, to deprive plaintiffs of their constitutional rights. Although not specifically stated, the conspiracy alleged took place between and among the Individual Defendants and Dennis Dillon, the District Attorney of Nassau County. An act in furtherance of the conspiracy is alleged in the form of a meeting that allegedly took place between the Individual Defendants and the Nassau County District Attorney on the day after the block party. The alleged object of the conspiracy was to have plaintiffs falsely arrested, maliciously prosecuted and driven from their homes.

According to plaintiffs, Dennis Dillon knew that no crime was committed by the Strongs and they were nonetheless arrested and falsely charged and prosecuted. The Individual Defendants are alleged to have met with Dennis Dillon on the day after the block party at the office of the District Attorney. At that meeting, it is alleged that the District Attorney encouraged the Individual Defendants to fabricate charges and swear to false statements about the Strongs so that they could be falsely prosecuted. All acts of the Individual Defendants, some of whom are white and others of whom are African–American, are alleged to have been motivated by the fact that plaintiffs are African–American and for this reason alone, the Individual Defendants did not want plaintiffs living in their neighborhood.[2]

## DISCUSSION

### I. *Legal Principles*

#### A. *Motion to Dismiss and Summary Judgment Standards*

Presently before the court are motions to dismiss as well as motions for summary judgment. Specifically, each Individual Defendant has moved to dismiss. Plaintiffs have moved for summary judgment.

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim, is properly granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Harsco v. Segui,* 91 F.3d 337, 341 (2d Cir.1996); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). When considering a motion to dismiss for failure to state a claim, the court can consider only the facts as set forth in the complaint or documents attached thereto. When considering the facts pled, the court must accept as true all factual allegations in the complaint. All reasonable inferences must be drawn in favor of the non-moving party. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 62 (2d Cir.1997). A complaint should not be dismissed "simply because a plaintiff is unlikely to succeed on the merits." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

To obtain summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, the party seeking summary judgment must demonstrate that "there is no genuine issue of any material fact and that the moving party is entitled to a

---

**2.** The court refers herein to the factual allegations of the complaint against the Individual Defendants—CV 98–2672. The allegations of the complaint against the County of Nassau— CV 98–4646—contain the same factual allegations but name the county as the defendant.

judgment as a matter of law." Fed. R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

In view of the fact that all parties have had ample opportunity to and, indeed, have submitted papers outside of the pleadings in support of their positions, the court will consider these motions as cross-motions for summary judgment.

### B.  *Stating a Claim Pursuant to 42 U.S.C. § 1985*

█  As noted above, plaintiffs' claims, which allege a conspiracy by private individuals with a state official, are properly construed as claims brought pursuant to 42 U.S.C. § 1985 ("Section 1985"). The elements of a claim under this statute are: (1) a conspiracy; (2) motivated by racial or other discriminatory animus; (3) for the purpose of depriving any person or a class of persons of the equal protection of privileges and immunities under the law; (4) an overt act in furtherance of the conspiracy and (5) injury. *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Mele v. Christopher,* 7 F.Supp.2d 419, 420 (S.D.N.Y.1998), *aff'd,* 173 F.3d 845 (2d Cir.1999); *Sacco v. Pataki,* 982 F.Supp. 231, 246 (S.D.N.Y.1997).

█  Section 1985 applies to conspiracies of private individuals as well as state actors. *See Traggis v. St. Barbara's Greek Orthodox Church,* 851 F.2d 584, 586–87 (2d Cir.1988). The statute creates no substantive rights but, instead, provides a remedy for the deprivation of rights guaranteed by the United States Constitution. *Great American Fed. Savings & Loan v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Traggis,* 851 F.2d 584, 586–87 (2d Cir.1988).

█  Given the factual allegations of the complaint, the constitutional rights alleged to have been violated by defendants are properly construed as plaintiffs' rights to be free of false arrest, false imprisonment and malicious prosecution. Such civil rights claims are governed by the tort law of the State of New York. *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 118 (2d Cir.1995), *cert. denied,* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). Accordingly, it is to New York law that the court looks to determine the viability of plaintiffs' claims.

### C.  *Elements of Malicious Prosecution, False Arrest and False Imprisonment Claims*

█  Under New York law, the four elements of a claim for malicious prosecution are: (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding and (4) actual malice as a motivation for the defendant's actions. *Russell,* 68 F.3d at 36; *Labensky v. County of Nassau,* 6 F.Supp.2d 161, 176 (E.D.N.Y.1998), *aff'd,* 173 F.3d 845, 1999 WL 146292 (2d Cir. 1999). A conviction on the underlying offense negates the favorable termination element of a claim for malicious prosecution. *Duamutef v. Morris,* 956 F.Supp. 1112, 1116 (S.D.N.Y.1997).

█  Additionally, a federal court considering a claim for malicious prosecution must dismiss the claim if a civil rights judgment in favor of the plaintiff would imply the invalidity of the plaintiff's underlying criminal conviction. *Heck v. Humphrey,* 512 U.S. 477, 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *Heck* requires dismissal of a civil rights claim seeking damages for an allegedly unconstitutional prosecution unless the conviction has been reversed on appeal or otherwise invalidated or called into question. *Id.*

█  The elements of a claim for false arrest and false imprisonment are: (1) defendant had intended to confine the plaintiff; (2) the plaintiff was conscious of the

confinement; (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. To prevail on a claim for false arrest, plaintiff must demonstrate the absence of probable cause to arrest. *Labensky,* 6 F.Supp.2d at 176 (citing *Zanghi v. Village of Old Brookville,* 752 F.2d 42, 45 (2d Cir.1985)). Put differently, the existence of probable cause to arrest is a complete defense to a claim for false arrest. *Tucker v. Gross,* 39 F.Supp.2d 244, 249–50 (E.D.N.Y.1999).

██ Just as a claim for malicious prosecution is barred by a conviction, a plaintiff's conviction prevents his recovery on a civil rights false arrest claim. This is because "where a civil rights plaintiff has been convicted of the offense for which he was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest." *Cameron v. Fogarty,* 806 F.2d 380, 388 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987).

## II. *Summary Judgment With Respect to Claim of Earl Strong*

██ Applying the principles discussed above to the claim of Earl Strong, the court holds that summary judgment dismissing his claim must be granted. There is no doubt that Earl Strong was convicted of harassment. That conviction was upheld on appeal and the opinion of the appellate court clearly outlines the reasons for upholding that conviction. Importantly, the Appellate Term sustained Earl Strong's conviction because of evidence indicating that he had initiated the altercation with his neighbors. *See People v. Strong,* 179 Misc.2d 809, 689 N.Y.S.2d 341 (App.Term 1999).

Under these circumstances, Mr. Strong cannot pursue a civil rights claim grounded on the notion that he was falsely arrested in connection with the block party altercation. Nor can Mr. Strong pursue a civil rights claim that he was maliciously prosecuted in connection with his arrest. Mr. Strong's claims are barred by his conviction which negates both the lack of probable cause element of the false arrest claim, *see Tucker,* 39 F.Supp.2d at 249–50, as well as the favorable termination element of a malicious prosecution, *see Hygh v. Jacobs,* 961 F.2d 359, 367 (2d Cir.1992).

Further, a judgment in Mr. Strong's favor would invalidate the state court criminal proceedings and therefore run afoul of the principles set forth by the United States Supreme Court in *Heck. See Duamutef,* 956 F.Supp. at 1115 (dismissing civil rights claims alleging perjured testimony and conspiracy to falsely prosecute where conviction had not been invalidated). Accordingly, all defense motions to dismiss the claims of Earl Strong are granted. Mr. Strong's cross-motion for summary judgment is denied.

## III. *Summary Judgment With Respect To Claims Of Tarika Strong*

██ As noted above, Tarika Strong's conviction of harassment was reversed on appeal. Accordingly, Tarika Strong's case does not suffer from the same fundamental defect as the claims of Earl Strong. Discovery is this case is ongoing. In fact, it is the court's understanding that the parties have not yet been deposed.

Although the court perceives the case brought by Tarika as exceedingly weak—she appears to ground her civil rights claim on a conspiracy evidenced only by the giving of witness statements to the police—the court will not dismiss the case at this time. The court is mindful of the rule that allegations in a complaint must be taken as true for the purpose of a motion seeking dismissal and the liberal view that must be afforded a *pro se* pleading. *See Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). In their present posture, the claims of Tarika Strong are not yet ripe for adjudication. Accordingly, the court denies all motions to dismiss the claims of Tarika Strong.

IV. *Plaintiffs' Case Against Nassau County*

■ The County of Nassau has not yet moved for summary judgment in this matter. At oral argument, it was indicated that a summary judgment motion would be made at the close of discovery. The court indicated that summary judgment in favor of the Nassau County would await the making of their motion. It is clear, however, that any motion made by Nassau County would rely on the same principles of law outlined in this Memorandum and Order. Because the issues are the same, further briefing by either plaintiff or defendant is unnecessary. Accordingly, upon reflection, the court concludes that the interests of judicial economy are best served by also dismissing the claims of Earl Strong as against the County of Nassau. The identity of issues also convinces the court that the *sua sponte* dismissal of Earl Strong's case against the County results in no prejudice to Mr. Strong.

**CONCLUSION**

For the reasons set forth above, the Individual Defendants' motions for summary judgment dismissing all claims brought by Earl Strong are granted. Earl Strong's motion for summary judgment is denied. The court further dismisses all claims of Earl Strong in his case against Nassau County. The motions to dismiss the claims of Tarika Strong are denied. Put simply, these cases continue with Tarika Strong only as a plaintiff.

This Memorandum and Order disposes of all dispositive motions currently pending in this matter.[3] As discussed at oral argument, the parties are to refrain from the making of further dispositive motions (motions to dismiss or for summary judgment) until the close of discovery. This case is returned to Magistrate Judge Boyle for all further pre-trial proceedings.

SO ORDERED.

---

**3.** There is also pending a motion by Earl Strong to dismiss his amended complaint and re-plead to name a proper defendant. In view of the fact that Earl Strong's claims have been dismissed in their entirety, the motion to dismiss and amend is denied as moot. Plaintiff Tarika Strong can take up any matter regarding the identity of defendants with Magistrate Judge Boyle.

## APPENDIX 1

(0015Q.04)

CASE # 96-925 N CR
January 12, 1999 TERM

At a term of the Appellate Term of the
Supreme Court of the State of New York
for the 9th and 10th Judicial Districts
held in Nasau County, on FEB 3. 1999

RECEIVED
MAR 08 1999

PRESENT-<u>HON. MARQUETTE L. FLOYD</u>     JUSTICE PRESIDING

    "     <u>HON. LOUIS C. PALELLA</u>     ASSOCIATE JUSTICE

    "     <u>HON. HOWARD E. LEVITT</u>     ASSOCIATE JUSTICE

-----------------------------------------------------x

The People of the State of New York,

                         Respondent

          -against-

EARL STRONG

                         Appellant

-----------------------------------------------------x

The above named appellant having appealed to this court
from  JUDGMENTS OF CONVICTION  of the DISTRICT COURT, NASSAU
COUNTY  rendered on  5/7/96  and the said appeal having been
argued by  TAMMY FEMAN, ESQ. , counsel for the appellant and
argued by  EDWARD MILLER, ESQ. , counsel for the respondent and
due deliberation having been had thereon:

          It is hereby ordered and adjudged that the judgment of
conviction for assault in the third degree is unanimously reversed
on the law and information dismissed.

LEGAL AID
ONE HELEN KELLER WAY
HEMPSTEAD, NY 11550

## APPENDIX 2

CASE # 96-925 N CR
January 12, 1999 TERM

Supreme Court of the State of New York
for the 9th and 10th Judicial Districts
held in Nasau County, on **FEB 3 1999**

PRESENT-<u>HON. MARQUETTE L. FLOYD</u> , JUSTICE PRESIDING

" <u>HON. LOUIS C. PALELLA</u> ASSOCIATE JUSTICE

" <u>HON. HOWARD E. LEVITT</u> ASSOCIATE JUSTICE

------------------------------------------------------x.

The People of the State of New York,

Respondent

-against-

EARL STRONG

Appellant

------------------------------------------------------x

The above named appellant having appealed to this court from JUDGMENTS OF CONVICTION of the DISTRICT COURT, NASSAU COUNTY rendered on 5/7/96 and the said appeal having been argued by TAMMY FEMAN, ESQ. , counsel for the appellant and argued by EDWARD MILLER, ESQ. , counsel for the respondent and due deliberation having been had thereon:

It is hereby ordered and adjudged that the judgment of conviction for assault in the third degree is unanimously reversed on the law and information dismissed.

Judgment of conviction for harassment in the second degree is unanimously affirmed.

LEGAL AID
ONE HELEN KELLER WAY
HEMPSTEAD, NY 11550

*Exhibit A*

DISTRICT ATTORNEY
NASSAU COUNTY
262 OLD COUNTRY RD.
MINEOLA, NY 11501

*John A.*

JOHN A. CAHILL

CHIEF CLERK

APPELLATE TERM

### Appendix 3

The People of the State of New York, Respondent,

v.

Earl Strong, Appellant.

Supreme Court of the State of New York, Appellate Term, 9th and 10th Judicial Districts

No. 96-925 N CR

Decided Feb. 3, 1999.

Present: FLOYD, J.P., PALELLA and LEVITT, JJ.

Defendant appeals from two judgments of the District Court, Nassau County (T.W. Dwyer, J.), rendered May 7, 1996, after a jury trial, which convicted him of assault in the third degree (Penal Law § 120.00[1]) and harassment in the second degree (Penal Law § 240.26[1]), and imposed sentences.

Judgment of conviction for assault in the third degree unanimously reversed on the law and information dismissed.

Judgment of conviction for harassment in the second degree unanimously affirmed.

On August 5, 1995, defendant initiated an altercation with his neighbors when defendant was prohibited from driving his automobile onto his street. The street had been closed to vehicular traffic to accommodate a town-sanctioned "block party."

The information alleging assault in the third degree states:

"Freddie Wilkerson, being duly sworn, deposes and says that on the 5th day of August, 1995, at about 3:00 p.m. in front of 609 Woodland Drive, South Hempstead, in the County of Nassau, New York, the defendant, EARL STRONG, did violate Section 120 Subdivision 1 of the Penal Law of the State of New York in that at the time and place aforesaid the defendant did with intent to cause physical injury to another person, he or she causes such injury to such person or to a third person, to wit:

After grabbing my mother and throwing her to the ground, the defendant, EARL STRONG, then started to punch at your deponent. He then grabbed me and knocked me to the ground, causing a lot of pain to my back. While I was on the ground he kicked me very hard in my side. This caused a lot of pain to my ribs. I was treated at Mercy Hospital. Your deponent did not give Earl Strong permission to intentionally cause me physical injury."

A "supporting deposition" of Freddie Wilkerson also states that "[defendant] started throwing punches at me. During this I attempted to fight back, but he is much larger than I am and he knocked me to the ground. This caused injury to my back and side."

The information charging assault in the third degree is jurisdictionally defective, mandating dismissal in view of the fact that the instrument fails to properly allege the requisite element of physical injury. The documents state only that defendant hit and kicked the victim, causing "a lot of pain," and "injury to my back and side." Without a proper development of the injuries, the element of "physical injury" is not factually demonstrated, mandating dismissal of the information (*see, People v. Garguilo,* NYLJ May 15, 1997 [AppTerm, 9th & 10th JudDists]; *see also, People v. Alejandro,* 70 N.Y.2d 133[, 517 N.Y.S.2d 927, 511 N.E.2d 71]).

We find that the jury properly convicted defendant of harassment in the second degree.

At the conclusion of the presentation of evidence, the court gave the jury its final instructions. When the jury returned with its verdict, the following colloquy took place:

"THE CLERK: Madam Forelady and members of the jury, what is your ver-

dict as to the charge of assault in the third degree?

THE FOREPERSON: Guilty.

THE CLERK: Madam Forelady, what is your verdict as to harassment in the second degree, the first one?

THE FOREPERSON: Guilty.

THE CLERK: Madam Forelady, what is your verdict as to harassment in the second degree, on the second?

THE FOREPERSON: Not guilty.

THE CLERK: You may be seated. Madam Forelady, by what vote is your verdict? Unanimous?

THE FOREPERSON: Two out of three.

THE CLERK: Were all of you agreed? I'm saying a unanimous vote.

THE FOREPERSON: Not one.

THE COURT: Do all six jurors agree on your verdict?

THE FOREPERSON: On which?

THE CLERK: Assault, on the first one, on everything.

THE FOREPERSON: No.

I thought five out of six.

THE CLERK: No, six. Six out of six.

THE COURT: We've got to go back. Sorry. I should have included that in the charge, I usually do. It has to be unanimous.

MADAME FORELADY: That's downstairs. They told us five out of six, that's in civil cases. Back we will go. (The jury was escorted from the courtroom.)"

Thereafter, the jury returned with unanimous guilty verdicts for one count of assault in the third degree and one count of harassment in the second degree. Defendant was acquitted of one other count of harassment in the second degree.

The court then reviewed the three informations to ensure that the verdicts were reached with respect to the correct counts.

Further, the court polled the jury which then individually answered in the affirmative when asked whether the verdict was correctly stated. Despite the fact that defendant was acquitted of one of the harassment charges, the jury nevertheless answered in the affirmative when asked if the correct verdict was guilty.

After the jury was dismissed, defendant moved to set aside the verdicts pursuant to CPL 440.10, arguing that same were rendered contrary to the weight of the evidence, and "based upon the ground that it appears this was a 5–6 vote." It must be noted that no objection appears in the record concerning the jury's affirmative answer of guilty when polled with respect to the harassment charge for which defendant was actually acquitted.

Defendant first argues that the court erred in failing to charge the jury about their duty to deliberate and reach a unanimous verdict. Because the record is devoid of any objection at trial, these claims have not been preserved for appellate review (*see, People v. Jackson,* 76 N.Y.2d 908, 563 N.Y.S.2d 42, 564 N.E.2d 652; *People v. Bravo,* 243 A.D.2d 640, 665 N.Y.S.2d 523; *People v. Robinson,* 218 A.D.2d 673, 630 N.Y.S.2d 505, *affd* 88 N.Y.2d 1001, 648 N.Y.S.2d 869, 671 N.E.2d 1266; *see also,* CPL § 470.05[2] ). In any event, had the issues been properly preserved, we would still find that the court properly instructed the jury.

It is well settled that the propriety of a jury charge will be upheld if it adequately apprises the jury of the law governing the case (*see, People v. Ladd,* 89 N.Y.2d 893, 653 N.Y.S.2d 259, 675 N.E.2d 1211; *People v. Dory,* 59 N.Y.2d 121, 463 N.Y.S.2d 753, 450 N.E.2d 673; *People v. Woods,* 41 N.Y.2d 279, 392 N.Y.S.2d 400, 360 N.E.2d 1082; CPL § 300.10). In the case at bar, defendant contends only that the court failed to instruct the jury of its duty to deliberate and reach a unanimous verdict. A review of the record indicates, however, that the court made the following statements to the jury:

"THE COURT: Madam Forelady, members of the jury. You are now about to assume the role for which you took your oath of office at the beginning of the trial.

All the testimony in the case is in, you've heard the final argument of both People and defendant. When I have finished speaking to you, *I'll hand the case over to your for your consideration and deliberations* so that you may reach a verdict that is fair and just: Fair and just to the defendant, and fair and just to the People.

I've instructed you several times during the course of the trial not to discuss the case with anyone else. That admonition is, of course, no longer binding upon you. In fact, *you are required to discuss the case and come to a decision.*

The charge itself is divided into two parts. The first part consists of the general principles of law that apply to this and to all criminal trials in this state.

Secondly, I will analyze the informations with you and will instruct you concerning legal points applicable to the various charges against the defendant.

I will explain the application of the law to the facts, all of which is submitted to you for your consideration, and upon which you are *required by law to deliberate,* and render your verdict as to the guilt or innocence of this defendant.

As I advised you before, you must accept the principles of law as I give them to you whether you agree with them or not. You have no discretion whatsoever to depart from these principles, and it is my duty to give these principles to you and *you will be guided by them in your deliberations.*" (emphasis added)

This charge, as a whole, conveys to the jury their duty to deliberate. Moreover, there is no requirement that the court instruct the jury that their verdict must be unanimous (*People v. Light,* 285 A.D. 496, 138 N.Y.S.2d 262).

Turning to defendant's argument that the jury was allegedly tainted by non-judicial instructions concerning unanimity of the verdict, there is nothing in the record to support this contention. Because no such corroboration exists, we cannot determine whether any unauthorized communication was made with the jury or whether defendant was excluded from a material stage of the trial (*see, People v. Rodriguez,* 251 A.D.2d 603, 673 N.Y.S.2d 940). Moreover, even assuming that the jury was given non-judicial information, the court gave a prompt curative instruction that the verdict must be unanimous, and sent the jury back to deliberate.

Defendant further claims that the harassment in the second degree conviction must be set aside because no intent to harass complainant Julia Wilkerson is found in the record. A person is guilty of harassment in the second degree

"when, with intent to harass, annoy or alarm another person ... [h]e ... strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." (Penal Law § 240.26[1] ).

Contrary to defendant's assertions, the element of intent necessary to establish the crime may be implied by the act itself (*see, People v. McGee,* 204 A.D.2d 353, 611 N.Y.S.2d 261).

Finally, viewing the evidence in a light most favorable to the People (*People v. Contes,* 60 N.Y.2d 620, 467 N.Y.S.2d 349, 454 N.E.2d 932), we find it was legally sufficient to establish defendant's guilt beyond a reasonable doubt. The evidence established that defendant displayed a belligerent and hostile attitude toward his neighbors which was clearly manifested in his unprovoked physical confrontation with a defenseless 62 year old woman. Moreover, since all issues of credibility and the weight to be accorded to the evidence adduced at trial are questions to be determined by the trier of facts, the jury's

determination should not be disturbed, as the record amply supports its findings (*People v. Gaimari,* 176 N.Y. 84, 68 N.E. 112). Thus, upon the exercise of this court's power of factual review, we are satisfied that the verdict was not against the weight of the credible evidence (*see, id.; see also,* CPL § 470.15[5] ).